IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JAMES P. BIRTS, et al.                                                    PLAINTIFFS

V.                              CASE NO. 08-CV-4011

JOHN R. VERMILLION, et al.                                               DEFENDANTS

**MEMORANDUM OPINION**

Before the Court is a Motion to Dismiss, or Alternatively, Motion for Partial Dismissal filed by Separate Defendants.[1]  (Doc. 46).  Plaintiffs have responded.  (Docs. 51).  Separate Defendants have replied to Plaintiffs' response.  (Doc. 53).  The Court finds the matter ripe for consideration.

**I.  BACKGROUND**

On September 11, 2008, Plaintiffs James Birts, Nate S. Orben, and Darlene M. Orben filed their First Amended Class Action Complaint against Separate Defendants.  Plaintiffs allege that the Separate Defendants:  (1) committed fraud by misrepresenting to senior consumers that a living trust was necessary to avoid probate and estate taxes; (2) engaged in the unauthorized practice of law by giving legal advice to senior consumers; (3) breached their fiduciary duties to Arkansas and Texas senior consumers by misrepresenting or omitting material information regarding probate and estate taxes; and (4) conspired with Mr. John R. Vermillion, a Texas attorney, to defraud Arkansas and Texas consumers.  These allegations center around the alleged sale of living trust documents, annuities, and/or other insurance products in connection with

---

[1]Throughout this opinion, "Separate Defendants" will refer to CLA USA, Inc.; CLA USA Insurance Services, L.P.; CLA Marketing, Inc.; CLA Estate Services, Inc.; CLA insurance Services, Inc.; Winning Strategies Marketing, Inc.; Quest Staffing Group, Inc.; Charles A. Loper, Jr.; Charles A. Loper, III; Steven Morgan; Robert Reese; James E. Bradshaw, Jr.; Joel Carson; and Olaf Turek.

various estate planning services offered to consumers in Arkansas and Texas.

Plaintiffs' allegations are as follows.[2]  Separate Defendants market, create and sell unnecessary and often useless living trusts to senior citizens as part of a scheme to obtain access to information about senior citizens' financial assets in order to sell annuities and other financial products to the senior citizens.  Separate Defendants begin their scheme by soliciting potential clients and inviting these individuals, especially senior citizens in Arkansas and Texas, to attend free lunches or dinners that include presentations.  According to Plaintiffs, these presentations, conducted by non-attorneys, misrepresent the impact of federal estate taxes and probate fees and omit material information regarding the estate tax exemption.

Plaintiffs also allege that at the presentations and throughout the process of setting up the living trusts,  non-attorneys dispense legal advice and recommend certain legal documents to consumers.  Representatives or insurance salesman, employed by Separate Defendants, earn additional bonuses by luring senior consumers to purchase life insurance and other products. These individual representatives execute living trust documents and other legal documents that Separate Defendants claim have been submitted to Mr. Vermillion, a Texas attorney, for review. Plaintiffs claims that Mr. Vermillion "rubber stamps" his approval on the living trust documents without ever speaking directly with the clients about their financial and estate planning needs and reinforces Separate Defendants' representations that the trusts will avoid probate.

The case is now before the Court on Separate Defendants' Motion to Dismiss.  Separate Defendants make several arguments as to why the claims against them should be dismissed.  The Court will discuss each argument in turn.

---

[2]At this stage in the litigation, the Court must accept the allegations in the Complaint as true.  *Owen v. General Motors Corp.*, 533 F.3d 913, 918 (8th Cir. 2008).

## II.  DISCUSSION

The Court will first examine several of the Separate Defendants' claims that the Court has no personal jurisdiction over them.  Next, the Court will address Separate Defendants' claims that Plaintiffs Nate S. Orben and Darlene M. Orben lack standing to pursue claims against Separate Defendants.  Following this discussion, the Court will analyze Separate Defendants' arguments that Plaintiffs have failed to state a claim upon which relief can be granted.  Last, the Court will discuss Separate Defendants' argument that Plaintiff James P. Birts's claims should be dismissed because he agreed to arbitrate all disputes related to any services rendered by Separate Defendants.

### A.  Personal Jurisdiction

The following Defendants argue that the Court lacks personal jurisdiction over them: CLA Insurance Services, Inc.; Charles A. Loper, III; Steven Morgan; Robert Reese; James E. Bradshaw, Jr.; Joel Carson; and Olaf Turek.  When a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff has the burden of proving facts supporting jurisdiction. *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008).

In a diversity action, the Court may assume jurisdiction over non-resident defendants only to the extent permitted by the long-arm statute of Arkansas and by the Due Process Clause of the Fourteenth Amendment.  *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (citing *Morris v. Barkbuster*, *Inc.*, 923 F.2d 1277 (8th Cir. 1991)).  The long-arm statute of Arkansas confers jurisdiction to the fullest constitutional extent; thus, the Court's inquiry is limited to whether the exercise of personal jurisdiction comports with due process.  Ark. Code Ann. § 16-4-101(B) (Repl. 1999)*; Dever*, 380 F.3d at 1073.

"Due process requires minimum contacts between a non-resident defendant and the forum

state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Dever*, 380 F.3d at 1073. There are two theories for evaluating minimum contacts: general jurisdiction and specific jurisdiction. *Id*. Under the general jurisdiction theory, the Court may hear this lawsuit against Separate Defendants if they have "continuous and systematic" contacts with Arkansas, even if the injuries at issue in this lawsuit did not arise out of the Separate Defendants' activities directed at Arkansas. *See id*. In contrast, specific jurisdiction is viable when the cause of action at issue arose out of or is related to a defendant's activities within a state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174 (1985).

Both theories of personal jurisdiction require some act by which Separate Defendants purposely availed themselves of the privilege of conducting activities within Arkansas, thus invoking the benefits and protections of its laws. *See Dever*, 380 F.3d at 1073 (citing *Hanson v. Denckla*, 357 U.S. 235 (1958)). If the Court determines that Separate Defendants have minimum contacts with Arkansas, the Court then may consider "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *See id.* (quoting *Burger King Corp.*, 471 U.S. 462 (1985)).

The Eighth Circuit has instructed courts to consider the following factors when resolving a personal jurisdiction inquiry, with significant weight given to the first three factors: (1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Dever*, 380 F.3d at 1073–74.

### 1. CLA Insurance Services, Inc.

Separate Defendants argue that no minimum contacts exist between CLA Insurance

Services, Inc., and Arkansas; thus, the Court has no personal jurisdiction over CLA Insurance Services.[3]  Defendants state that CLA Insurance Services, Inc., is a non-functioning entity that does not conduct any business, activities, or services whatsoever.  According to Separate Defendants, CLA Insurance Services, Inc., was originally organized as a multi-level insurance marketing company; however, prior to functioning in any capacity, the decision was made to form a limited partnership to serve the marketing functions.  Thus, CLA Insurance Services, L.P., was organized and assumed the functions originally intended to be performed by CLA Insurance Services, Inc.  Separate Defendants state that CLA Insurance Services, Inc., has never performed any business or management functions.

Plaintiffs assert that the alter ego doctrine can be employed to establish personal jurisdiction over CLA Insurance Services, Inc.  Separate Defendants do not contest that the Court has personal jurisdiction over CLA USA, Inc., CLA Insurance Services, L.P., or CLA Estate Services, Inc.  According to Plaintiffs, the contacts of these entities are sufficient to satisfy due process in Arkansas as to CLA Insurance Services, Inc.

The doctrine of piercing the corporate veil is founded in equity and should be applied when the facts warrant its application to prevent an injustice." *K.C. Properties of N.W. Arkansas, Inc. v. Lowell Investment Partners, L.L.C.*, 373 Ark. 14, 32, 280 S.W.3d 1 (2008).  This doctrine should be applied with great caution.  *Id*.  The court will disregard the corporate facade when the corporate form has been illegally abused to the injury of a third party.  *Id*.

Here, Plaintiffs allege that because of the control exerted over all the CLA entities through its common officers and directors, the contacts of CLA entities that do business in Arkansas may be imputed to CLA Insurance Services, Inc.  However, all corporations, regardless

---

[3]CLA Insurance Services, Inc., is a Texas corporation.

of the fact that the stockholders and the officers of the corporation are identical, are separate and distinct legal entities. *Id*. "'The fact that the officers of one corporation are also the officers of another does not make the corporations the same, nor the acts of one the acts of the other.'" *Id*. at 32-33 (quoting *Mannon v. R.A. Young & Sons Coal Co.*, 207 Ark. 98, 179 S.W.2d 457 (1944)). Plaintiffs seem to have based their piercing the corporate veil argument mostly, perhaps solely, on the fact that the corporations share the same corporate officers. Thus, Plaintiffs have insufficiently plead and have been unable to show that the corporate forms of the CLA entities were abused to such an extent that piercing the corporate veil would be proper.

Nevertheless, Plaintiffs have asked for the opportunity to conduct discovery on this jurisdictional issue before the Court dismisses the claims against CLA Insurance Services, Inc. The Court will grant Plaintiffs' request and will allow Plaintiffs thirty days from the date of this opinion to conduct limited discovery on this jurisdictional issue. After the thirty-day limited discovery period has expired, Plaintiffs will have ten days to file a supplement to their response to the Motion to Dismiss. The supplement should address the issue of whether the Court may exercise personal jurisdiction over CLA Insurance Services, Inc. Defendant CLA Insurance Services, Inc., may have ten days after Plaintiffs file their response to file a supplement to their Motion to Dismiss and Reply, which shall address the jurisdiction issue only.

### 2. Charles A. Loper, Jr.

Plaintiffs claims against Charles A. Loper, Jr. ("Mr. Loper") as well as the other Separate Defendants include fraud, unauthorized practice of law, breach of fiduciary duty, and civil conspiracy. Mr. Loper, a Texas resident, argues that he is not subject to personal jurisdiction in this Court because any alleged actions that he took regarding the claims against him were corporate acts and not individual acts. He further argues that none of his alleged contacts with

Arkansas are of such a nature to satisfy the Constitutional requirements of personal jurisdiction.

"[A] corporate agent may be held personally liable for torts committed in the corporate capacity." *Ripplemeyer v. Nat'l Grape Coop. Assoc., Inc.*, 807 F. Supp. 1439, 1446 (W.D. Ark. 1992). Thus, if the corporate officer engages in tortious conduct in his corporate capacity in the forum, courts will consider this conduct as contact with the forum that is sufficient enough to support a finding of personal jurisdiction over the officer in his individual capacity. *Id*. Minimum contacts are established if a defendant purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to the activities. *St. Jude Medical, Inc. v. Lifecare Int'l Inc.*, 250 F.3d 587, 591 (8th Cir. 2001). However, each defendant's contacts with the forum state must be assessed individually. *Torchmark Corp. v. Rice*, 945 F. Supp. 172, 177 (W.D. Ark. 1996) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Relevant factors to be considered include the following: (1) the nature, extent, and duration of the individual's contacts with the forum; (2) whether the individual was acting in a representative capacity; (3) the extent and nature of the corporate officer's personal participation in the alleged tortious conduct; (4) the nature and quality of the officer's forum contacts; and (5) the officer's role in the corporate structure. *Ripplemeyer*, 807 F. Supp at 1446.

Mr. Loper is a corporate officer of all of the entities named in the Complaint.[4] He is the President and Director of CLA Estate Services, Inc., which has an office in and conducts business in Arkansas.[5] Mr. Loper states that he personally makes no sales in Arkansas and does

---

[4]Mr. Loper serves as President and Director of CLA Insurance Services, Inc.; Chief Executive Officer and Director of CLA USA, Inc; President and Director of CLA Marketing, Inc.; President and Director of CLA Estate Services, Inc.; Secretary and Director of Winning Strategies Marketing, Inc.; and Director of Quest Staffing Group, Inc.

[5]CLA Estate Services was formed in Texas has its principal place of business in Texas.

not make regular trips to Arkansas for any personal or business reason.  However, Mr. Loper's

liability in this action is based on management decisions he made and company policies he

helped to create that allegedly lead to the defrauding of consumers in Arkansas.  Mr. Loper holds

an insurance license in Arkansas, even though he maintains that he has no clients in Arkansas.

Plaintiffs allege that Mr. Loper is a corporate officer of corporations that coordinate[6] the sale of

and market unsuitable products to consumers in Arkansas.  They further allege that these

corporations or representatives of these corporations conspired with others to defraud Arkansas

consumers, engage in the unauthorized practice of law in Arkansas, and fraudulently enticed

senior consumers to purchase living trusts through misrepresentations and/or omissions regarding

the need for these living trusts to avoid probate and estate taxes.  These corporations undoubtedly

solicited business in Arkansas.  Even though the corporate decisions that Mr. Loper was

allegedly involved in or aware of might not have taken place in Arkansas, they were performed

for the very purpose of having their consequences felt in Arkansas.  *See Calder v. Jones*, 465

U.S. 783, 789 (1984).

Considering all facts together and the relevant factors discussed above, the Court

concludes that it may properly exercise personal jurisdiction over Mr. Loper.  Thus, the Motion

to Dismiss as it relates to Mr. Loper must be **DENIED**.

### 3.  Charles A. Loper, III

Charles A. Loper III ("Mr. Loper III"), a Texas resident, argues that he is not subject to

personal jurisdiction in this Court because any alleged actions that he took regarding the claims

---

[6]CLA Estate Services, Inc., is a corporation that coordinates estate planning services. After the consumer's estate documents are prepared, a representative of CLA Estate Services, Inc., delivers the documents and assists in the implementation of the estate plan.  A representative from the corporation also reviews the estate plan regularly after a certain amount of time has passed.  *See* http://www.clausa.com/estate.html (last visited September 18, 2009).

against him were corporate acts and not individual acts.  He further argues that none of his alleged contacts with Arkansas are of such a nature to satisfy the Constitutional requirements of personal jurisdiction.

Mr. Loper III, like Charles A. Loper, is a corporate officer of all the entities named in the Complaint.[7]  Mr. Loper III is the Secretary and Director of CLA Estate Services, Inc., which has an office in and conducts business in Arkansas.  Mr. Loper states that he personally makes no sales in Arkansas and does not make regular trips to Arkansas for any personal or business reason.  However, Mr. Loper III's liability in this action is based on management decisions he made and company policies he helped to create that allegedly lead to the defrauding of consumers in Arkansas.  Mr. Loper III holds an insurance license in Arkansas, even though he maintains that he has no clients in Arkansas.  Plaintiffs allege that Mr. Loper III is a corporate officer of corporations that coordinate[8] the sale of and market unsuitable products to consumers in Arkansas.  They further allege that these corporations or representatives of these corporations conspired with others to defraud Arkansas consumers, engage in the authorized practice of law in Arkansas, and fraudulently enticed senior consumers to purchase living trusts through misrepresentations and/or omissions regarding the need for these living trusts to avoid probate and estate taxes.  These corporations undoubtedly solicited business in Arkansas.  Mr. Loper III

---

[7]Mr. Loper III serves as Secretary and Director of CLA Insurance Services, Inc.; President and Director of CLA USA, Inc.; Secretary and Director of CLA Marketing, Inc.; Secretary and Director of CLA Estate Services, Inc.; President and Director of Winning Strategies Marketing, Inc.; and Vice President, Secretary, and Director of Quest Staffing Group.

[8]CLA Estate Services, Inc., is a corporation that coordinates estate planning services. After the consumer's estate documents are prepared, a representative of CLA Estate Services, Inc., delivers the documents and assists in the implementation of the estate plan.  A representative from the corporation also reviews the estate plan regularly after a certain amount of time has passed.  *See* http://www.clausa.com/estate.html (last visited September 18, 2009).

handles the administrative business of CLA Estate Services, Inc., and the website directs consumers to contact Mr. Loper III for any service issues.  Even though the corporate decisions that Mr. Loper III was allegedly involved in or aware of  might not have taken place in Arkansas, they were performed for the very purpose of having their consequences felt in Arkansas.  *See Calder v. Jones*, 465 U.S. 783, 789 (1984).

Considering all facts together and the relevant factors discussed above, the Court concludes that it may properly exercise personal jurisdiction over Mr. Loper III.  Thus, the Motion to Dismiss as it relates to Mr. Loper III must be **DENIED**.

### 4.  Steven Morgan

Plaintiffs claims against Steve Morgan include fraud, unauthorized practice of law, breach of fiduciary duty, and civil conspiracy.  Mr. Morgan, a Texas resident, argues that he is not subject to personal jurisdiction in this Court because any alleged actions that he took regarding the claims against him were corporate acts and not individual acts.  He further argues that none of his alleged contacts with Arkansas are of such a nature to satisfy the Constitutional requirements of personal jurisdiction.

Prior to "early 2008," Mr. Morgan was the Vice President of CLA Estate Services, Inc., and was a corporate officer of most of the named entities in the Complaint.[9]  In late 2007, Mr. Morgan's employment with the CLA entities and/or Winning Strategies, Inc., ended.  In early 2008, his position as officer or director of the CLA entities and Winning Strategies Marketing, Inc., ended.  During his employment with the CLA entities, Mr. Morgan was the head of the workshop division of CLA Estate Services, Inc., which organized comprehensive estate planning

---

[9]Mr. Morgan was also the Vice President and Director of CLA Insurance Services, Inc.; Vice President and Director of CLA USA, Inc.; Vice President and Director of CLA Marketing, Inc.; and President, Secretary, and Director of Winning Strategies Marketing, Inc.

workshops for retired people.  Some of these workshops were conducted in Miller County, Arkansas.  Mr. Morgan does not contest that seminars and meetings held in Arkansas consumers' homes were conducted by agents who were trained, tested, and certified with his leadership. However, Mr. Morgan maintains that he never personally conducted any of the seminars in Arkansas.  Mr. Morgan holds an Arkansas insurance license.

Plaintiffs allege that Mr. Morgan led and oversaw the presentations by CLA Estate Services, Inc., that contained the fraudulent statements and omissions that harmed senior consumers in Arkansas.  Plaintiffs also allege that Mr. Morgan knowingly made management decisions in his role as a corporate officer and director of the CLA entities that led to the defrauding of Arkansas consumers.  By overseeing these Arkansas workshops and participating in management decisions of the CLA entities, Mr. Morgan purposefully availed himself of the privilege of conducting activities within Arkansas and could reasonably expect to be haled into court in Arkansas based on his Miller County workshop activities and management decisions that affected Arkansas consumers.

Having considered all facts together and the relevant factors discussed above, the Court concludes that it has personal jurisdiction over Mr. Morgan such that the assertion of this jurisdiction over him would not offend traditional notions of fair play and substantial justice. Thus, the Motion to Dismiss as it relates to Mr. Morgan must be **DENIED**.

<u>5.  Robert Reese</u>

Plaintiffs allege that Robert Reese was involved in the conspiracy to perpetuate fraud and injustice.  Mr. Reese, a Texas resident, owns Winning Strategies Marketing, Inc., along with Steve Morgan, Charles Loper, Jr., and Charles Loper, III.  Plaintiffs allege that Winning Strategies Marketing, Inc., aids in targeting Arkansas senior consumers who receive the

invitations to the estate planning seminars.  Mr. Reese states that he is not employed by or associated with the CLA named entities.  However, Plaintiffs allege that Mr. Reese "could" still be involved in the conspiracy to defraud Arkansas senior consumers through his management of Winning Strategies Marketing, Inc., which "may be" closely related to the CLA named entities.

Considering these facts and the relevant factors listed above, the Court cannot find that Plaintiffs have made a prima facie showing that Mr. Reese has the requisite minimum contacts to render personal jurisdiction proper.  Thus, the Motion to Dismiss as it relates to Mr. Reese must be **GRANTED**.[10]

### 6. James E. Bradshaw, Jr., Joel Carson, and Olaf Turek

Mr. James E. Bradshaw, a Texas resident, is the President of Defendant CLA USA, Inc. He is not a Director of the company and claims that he has no role in the formulation of company policies and direction.  He also has no ownership interest in CLA USA, Inc.  Mr. Bradshaw holds an Arkansas insurance license.

Mr. Joel C. Carson, a Texas resident, is employed by CLA USA, Inc., as National Sales Director.  He is not a Director of the company and claims he has no role in the formulation of company policies and direction.  He has no ownership interest in CLA USA, Inc.  Mr. Carson does not currently hold an Arkansas insurance license and has not done so since 2001.

Mr. Olaf Turek , a Texas resident, is the General Counsel and Chief Compliance Officer for the following entities:  CLA Insurance Services, Inc.; CLA USA, Inc.; CLA Marketing, Inc.; CLA Estate Services, Inc.; Winning Strategies Marketing, Inc.; and Quest Staffing Group, Inc. He is not a Director of any of the above named entities.  Mr. Turek has never drafted a living

---

[10]Plaintiffs may wish to amend their complaint to add Mr. Reese as a party during discovery if they discover information to support a finding of the requisite minimum contacts required to exercise personal jurisdiction over Mr. Reese.

trust for any client of the above named entities.

Plaintiffs allege that Mr. Bradshaw, Mr. Carson, and Mr. Turek are involved in a conspiracy designed to defraud citizens of Arkansas, which creates a sufficient basis for the exercise of personal jurisdiction. The Court disagrees. The Court cannot find that Plaintiffs have made a prima facie showing that either Mr. Bradshaw, Mr. Carson, or Mr. Turek has the requisite minimum contacts to render personal jurisdiction proper. Thus, the Motion to Dismiss as it relates to Mr. Bradshaw, Mr. Carson, and Mr. Turek must be **GRANTED**.[11]

*B. Standing*

Separate Defendants argue that Plaintiffs Nate S. Orben and Darlene M. Orben lack standing to bring any claims against Separate Defendants. Separate Defendants claim that the Orbens have no known business or personal relationships with Separate Defendants.[12] Thus, according to Separate Defendants, Plaintiffs cannot prove one of the three essential elements of standing. Namely, Plaintiffs cannot prove a causal connection between the Orbens' injury and the conduct complained of and attributed to Separate Defendants.

Constitutional standing requires the following three elements. *Delorme v. U.S.*, 354 F.3d 810, 815 (8th Cir. 2004). First, the plaintiff must demonstrate that he or she has suffered an injury in fact that is actual, concrete, and particularized. *Id*. Second, the plaintiff must show a causal connection between the conduct complained of and the injury. *Id*. Third, the plaintiff must show that the injury will be redressed by a favorable decision. *Id*. Each element must be supported with the manner and degree of evidence required at the successive stages of the

---

[11]Plaintiffs may wish to amend their complaint to add these individuals as parties if, after some discovery, Plaintiffs discover information to support a finding of the requisite minimum contacts required to exercise personal jurisdiction over these individuals.

[12]Separate Defendants admit that the Orbens were clients of The Estate Plan, Inc.

litigation.  *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007).  When a motion

to dismiss is made on standing grounds, the standing inquiry must be done in light of the factual

allegations of the pleadings.  *Id*. at 570.  It follows that, in a response to a motion to dismiss,

general factual allegations of injury resulting from the defendant's conduct may suffice, for the

court will presume that general allegations embrace those specific facts that are necessary to

support the claim.  *Id*. at 569.

Here, in their Complaint, Plaintiffs allege that they were injured by the conduct of

Separate Defendants.  Plaintiffs state that they paid for unnecessary living trust documents and

that they were misled by Separate Defendants or representatives of Separate Defendants as to the

necessity and function of these documents.  The Court is satisfied that at this stage in the

pleadings, the Orbens have stated general factual allegations of injury resulting from Separate

Defendants' conduct.  Thus, the Court concludes that the Orbens have standing to pursue their

claims against Separate Defendants.  However, Separate Defendants may wish to revisit this

issue at the summary judgment stage of this litigation.

C.  *Failure to State a Claim*

Separate Defendants assert three different "failure to state a claim" arguments.  First,

Separate Defendants allege that Plaintiffs Nate Orben and Darlene Orben fail to state valid

claims against Separate Defendants.  Next, Separate Defendants argue that all Plaintiffs fail to

state valid claims against Quest Staffing Group, Inc.  Last, Separate Defendants argue that all

Plaintiffs fail to state valid claims against CLA Insurance Services, Inc.  The Court will address

each argument in turn.

1.  The Orbens' claims against Separate Defendants

First, Defendants argue that, pursuant to Federal Rule of Civil Procedure 12(b)(6),

Plaintiffs Nate S. Orben and Darlene M. Orben fail to state a claim upon which relief can be granted against Separate Defendants. A complaint that is attacked by a Rule 12(b)(6) motion to dismiss must allege facts, which, when taken as true, raise more than a speculative right to relief. *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). If the allegations on the face of the complaint show that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate. *Id.*

Separate Defendants argue that the Orbens' claims against Separate Defendants should be dismissed because there is no specific allegation in the Complaint that the Orbens had any contacts, dealings, or business or personal relationships with any of the Separate Defendants. Separate Defendants conclude that because no relationship exists between the Orbens and Separate Defendants, no valid cause of action can exist.

In the Complaint, Plaintiffs mostly refer to all Plaintiffs collectively and all Defendants collectively. Thus, it is difficult, if not impossible, to distinguish between the claims of the Orbens and those of the Birts if, indeed, they do have separate claims. It is also difficult to distinguish which claims are alleged against which Defendants, if indeed, there are separate claims alleged against Separate Defendants. However, at this stage in the litigation, the Court must take all facts alleged in the Complaint as true. *Owen v. General Motors Corp.*, 533 F.3d 913, 918 (8th Cir. 2008). Here, the Court is satisfied that the complaint, if taken as true, alleges the necessary relationship between Separate Defendants and Plaintiffs (including the Orbens) and adequately states claims for relief against Separate Defendants for fraud, the unauthorized practice of law, breach of fiduciary duty, and civil conspiracy. However, Separate Defendants may wish to address this issue again in a motion for summary judgment or in a response to a

class certification motion.

### 2.  Plaintiffs' claims against Quest Staffing Group, Inc.

Plaintiffs allege that Quest Staffing Group, Inc., is a Texas corporation conducting business in Arkansas by contacting Arkansas residents by telephone, by recruiting agents to sell insurance and other products for Separate Defendants, and providing staffing services to these agents in Arkansas.  However, Separate Defendants assert that Quest Staffing Group, Inc., provides temporary nurse staffing to hospitals and other healthcare facilities.  Thus, no business conducted by Quest Staffing Group, Inc. is related to the allegations in Plaintiffs' complaint.

Separate Defendants argue that because they have stated that the business of Quest Staffing, Inc., is not related to this litigation in any way, Plaintiffs have failed to state a claim upon which relief can be granted against Quest Staffing Group, Inc.  However, Defendants fail to account for the fact that, at this stage in the litigation, the Court must accept facts alleged in Plaintiffs' Complaint as true.  *Id.*  Plaintiffs' factual allegation is that Quest Staffing Group, Inc., contacts Arkansas residents by telephone, recruits agents for certain CLA corporations, and provides staffing services to these agents in Arkansas.  The Court may not resolve a factual dispute on a motion to dismiss.  Accordingly, Separate Defendants' argument regarding the functions of Quest Staffing Group, Inc., must fail.  The Court is satisfied that the Complaint, if taken as true, adequately states claims for relief against Quest Staffing Group, Inc. Plaintiffs may wish to address this issue again in a motion for summary judgment.

### 3.  Plaintiffs' claims against CLA Insurance Services, Inc.

Separate Defendants argue that it is impossible to state a valid cause of action upon which relief can be granted against CLA Insurance Services, Inc., because this entity conducts no business, activities, or services whatsoever.  Separate Defendants rely on the fact that because

they have stated that CLA Insurance Services, Inc., has never performed any business or management function, all claims against it must be dismissed.  Once again, Defendants fail to account for the fact that, at this stage in the litigation, the Court must accept facts alleged in Plaintiffs' Complaint as true.  *Id*.  The Court may not resolve a factual dispute on a motion to dismiss.  Accordingly, Separate Defendants' argument regarding the functions of CLA Insurance Services, Inc., must fail.  The Court is satisfied that the Complaint, if taken as true, adequately states claims for relief against CLA Insurance Services, Inc.  Plaintiffs may wish to address this issue again in a motion for summary judgment.

### C.  Arbitration

The Court will now address Separate Defendants' final argument, which is that Plaintiff James P. Birts's claims against Separate Defendants should be dismissed because he agreed to arbitrate any controversy arising out of, or relating to, any services he received from Separate Defendants.   A written agreement to arbitrate "in any ... contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Here, there is no dispute that the contract evidences interstate commerce by its terms. Thus, the Court's role under the Federal Arbitration Act is limited to the following two questions:  1) whether a valid agreement to arbitrate exists, and if it does, 2) whether the dispute is within the scope of the agreement. *Pro Tech Industries, Inc. v. URS Corp.,* 377 F.3d 868, 871 (8th Cir. 2004) (citing *Gannon v. Circuit City Stores, Inc.,* 262 F.3d 677, 680 (8th Cir. 2001)).

Mr. Birts executed a CLA Estate Services, Inc. Consumer Information & Disclosure agreement when Mr. Birts contracted for the services that are the subject of this lawsuit.  The agreement provides as follows:

-17-

6.      **Right to Cancel/Cancellation/Arbitration Policy:**
... You understand and agree that any controversy or claim arising out of, or relating to, this contract or any breach thereof shall be settled using the Better Business Bureau dispute resolution program, which includes mediation and/or arbitration.

Plaintiffs question whether the term "this contract" refers to the Information & Disclosure agreement itself or whether it refers to another contract.  Plaintiffs also make an argument that the arbitration provision is invalid because the Better Business Bureau rules were not attached to the agreement.  The Court questions whether this Information & Disclosure agreement was attached to a contract or whether it was a stand-alone document. Plaintiffs also question whether Jim Locklear, the representative who signed the agreement for CLA Estate Services, Inc., has the authority to bind CLA Estate Services, Inc.  The Court is not satisfied that, at this point, the record is sufficiently developed to decide the arbitration issue.  Separate Defendants should pursue the arbitration issue in a separate Motion to Compel Arbitration, attaching a copy of the entire contract between Mr. Birts and CLA Estate Services, Inc.  The Court will take up the issue at that time.

## III.  CONCLUSION

For reasons discussed herein and above, the Court finds that the Motion to Dismiss filed by Separate Defendants should be and hereby is **GRANTED IN PART and DENIED IN PART**.  Plaintiffs' claims against Robert Reese, James A. Bradshaw, Jr., Joel Carson, and Olaf Turek are **DISMISSED**.  An order of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, this 23rd day of September, 2009.


       /s/ Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge